UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSE NEGRÓN,                          *
                                      *
          Petitioner,                 *
                                      *
     v.                               *          Civil Action No. 14-cv-12227-IT
                                      *
BRUCE GELB,                           *
                                      *
          Respondent.                 *


MEMORANDUM & ORDER

August 24, 2017

TALWANI, D.J.

Petitioner Jose Negrón filed this <u>Petition Under 28 U.S.C. § 2254 for Writ of Habeas</u>

<u>Corpus by a Person in State Custody</u> [#1] ("Petition") against Respondent Bruce Gelb, the

Superintendent at Souza Baranowski Correctional Center where Petitioner is incarcerated. For

the reasons set forth below, the Petition is DENIED.

I.     Background

On September 28, 2007, a jury found Petitioner guilty on armed home invasion, in

violation of Mass. Gen. Laws ch. 265, § 18C, and a number of firearms-related counts. Pet. for

Writ of Habeas Corpus 2 ["Pet."] [#1]. Petitioner filed a direct appeal, a motion for a new trial,

and an appeal of the denial of that motion.

On May 22, 2012, the Massachusetts Appeals Court concluded that the ballistic

certificate was improperly admitted in violation of the Confrontation Clause, contrary to the

holding of <u>Melendez-Diaz  v. Massachusetts</u>, 557 U.S. 305 (2009), and vacated all of Petitioner's

convictions except the armed home invasion conviction. <u>Commonwealth v. Negrón</u>, No. 08-P-

1

1807, 2012 WL 1835125, at *3-4 (Mass. App. Ct. May 22, 2012) (Negrón I). The Supreme

Judicial Court denied further appellate review as to the remaining claim. Commonwealth v.

Negrón, 463 Mass. 1103 (2012).

Petitioner filed a *pro se* second motion for a new trial and a second state court appeal in

2012.[1] On March 3, 2014, the Massachusetts Appeals Court affirmed the denial of Petitioner's

second motion for a new trial. Commonwealth v. Negrón, No. 13-P-142, 2014 WL 801645, at *1

(Mass. App. Ct. Mar. 3, 2014) (Negrón II). On April 7, 2014, Petitioner filed an Application for

Leave to Obtain Further Appellate Review ("ALOFAR"), Not. Manual Filing Resp.'s Suppl.

Ans. ["S.A."] 903-40 [#10], which the Supreme Judicial Court ("SJC") denied on May 5, 2014,

id. at 901. On May 20, 2014, Petitioner filed the *pro se* Petition for Writ of Habeas Corpus [#1]

now pending in this court.

II.     Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, a person in custody

pursuant to a state-court judgment may obtain relief through a petition for a writ of habeas

corpus if his or her confinement violates the United States Constitution or federal laws or

treaties. 28 U.S.C. § 2254(a). A court may not grant an application for a writ of habeas corpus

unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A). For such exhaustion, the petitioner must invoke "one complete round of the

State's established appellate review process," O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999),

and "must have presented both the factual and legal underpinnings of his claim to the state

---

[1] In 2013, Petitioner also filed a *pro se* habeas petition in the United States District Court.
Negrón v. Gelb, 13-cv-10128 (D. Mass.). The court allowed Petitioner's motion for voluntary
dismissal so that he could pursue his state court remedies, and on October 23, 2013, dismissed
the habeas petition without prejudice. Order Allowing Mot. for Voluntary Dismissal [#28],
Negrón v. Gelb, 13-cv-10128; Order Dismissing Case [#29], Negrón v. Gelb, 13-cv-10128.

courts," <u>Nadworny v. Fair</u>, 872 F.2d 1093, 1096 (1st Cir. 1989), for "each and every claim contained within the application," <u>Adelson v. DiPaola</u>, 131 F.3d 259, 261 (1st Cir. 1997).

Furthermore, when a state court has adjudicated a claim on its merits, habeas relief shall not be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

For habeas relief purposes, the phrase "clearly established [f]ederal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). To secure habeas relief on the basis of an "unreasonable application of" Supreme Court precedent, the state-court decision must not merely be based on an "erroneous" or "incorrect" legal interpretation. <u>Id.</u> at 411. Rather, it "must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (quoting <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014)).

In reviewing a habeas claim, all factual determinations made by the state court are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore "a state-court adjudication of an issue framed in terms of state law is . . . entitled to deference under section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights as its federal counterpart." <u>Foxworth v. St. Amand</u>, 570 F.3d 414, 426 (1st Cir. 2009).

When the state court does not decide the case on its merits but instead rests its decision on an independent and adequate state law ground, federal courts are foreclosed from granting habeas relief absent (1) a showing of cause for the procedural error and prejudice resulting from it or (2) a showing "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-50 (1991) (citation omitted). A petitioner can show cause for such procedural default by showing that the appellate counsel's assistance was ineffective. Murray v. Carrier, 477 U.S. 478, 488 (1986). However, to do so, the petitioner must exhaust the claim for ineffective assistance of appellate counsel. Id. at 488-89. The petitioner must also show that the counsel's performance was ineffective pursuant to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id. at 488. Under Strickland, for a successful claim of ineffective assistance of counsel, the petitioner must show that (1) the counsel's representation "fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) "the deficient performance prejudiced the defense," id. at 687. A mere showing of the counsel making an error is insufficient to show cause for a procedural default. Murray, 477 U.S. at 492.

III.     Discussion

Petitioner raises four claims in his Petition for Writ of Habeas Corpus [#1]: (1) the jury instruction as to the armed home invasion offense failed to include an element of that offense; (2) trial counsel's assistance was ineffective; (3) the Commonwealth's evidence to support the armed home invasion offense was insufficient; and (4) the courtroom was closed to his family members. In his accompanying memorandum of law, Petitioner raises a fifth claim: the trial judge failed to require the Commonwealth to provide a race-neutral rationale for its peremptory challenges against two jurors. Mem. in Supp. of Pet. for Writ of Habeas Corpus ["Pet'r's Mem."] 21-26 [#25].

*A. Ground 1: Erroneous Home Invasion Instruction*

Petitioner claims that the trial judge's instruction failed to include a required element of armed home invasion. To obtain a conviction for armed home invasion under Mass. Gen. Laws ch. 265, § 18C, the Commonwealth must prove the following:

> that the defendant (1) "knowingly enter[ed] the dwelling place of another"; (2) "knowing or having reason to know that one or more persons are present within" (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) "while armed with a dangerous weapon"; and (4) "use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place."

Commonwealth v. Doucette, 720 N.E.2d 806, 809 (Mass. 1999) (quoting Mass. Gen. Laws ch. 265, § 18C). The "dangerous weapon" need not be a firearm, see, e.g., id. at 808, 810 (categorizing knife as a dangerous weapon), and it need not be operational, so long as the weapon reasonably appears dangerous to the victim, Commonwealth v. Mattei, 920 N.E.2d 845, 851 n.12 (Mass. 2010).

When initially instructing the jury in this case, the trial judge stated that the Commonwealth had the burden to prove beyond a reasonable doubt these four elements of the offense, Mass. Gen. Laws ch. 265, § 18C, and a fifth element: "that [Petitioner] committed the offense while he was armed with a firearm." S.A. 150-51 [#7]. The trial judge stated further that the "fifth element" was distinct from the dangerous weapon element.[2] Id. at 154. At sidebar, the

---

[2] In describing the added element, the trial judge stated:

> ". . . it's important that you understand that this is an element that is distinguished from the third element ["armed with a dangerous weapon"] I just defined for you a moment ago, so the fifth element that the prosecution must have proven beyond a reasonable doubt is that this offense of home invasion was committed while [Petitioner] or a person with whom he was involved in a joint

prosecutor advised the trial judge that the addition of this fifth element was erroneous, and the trial judge corrected her mistake in further instructions to the jury.[3] Id. at 178-79. In her corrective instruction, the trial judge told the jury to ignore the last element, and that the dangerous weapon need not be a firearm. The judge reiterated that the dangerous weapon was "any item that is capable of causing serious bodily injury or death to a person." Id.

On March 3, 2014, in denying Petitioner's appeal of the denial of his claim in the second motion for a new trial on the basis of the jury instructions, the Massachusetts Appeals Court noted that no objection had been raised at trial and therefore considered "whether [the] error

---

> venture was armed with a firearm. And I previously defined for you what a firearm is, so the prosecution must have proven beyond a reasonable doubt that this offense of home invasion, those four elements that I just defined for you, was committed while [Petitioner] or a person or persons with whom he was involved in a joint venture was armed with a firearm as defined by Massachusetts law and [Petitioner] knew that that person was armed with a firearm while the offense of home invasion was being committed." S.A. Ex. D 154-55 [#7].

[3] The trial judge stated:

> [I]n instructing you on one charge[,] I instructed you that the Commonwealth need to prove one more element than is actually necessary . . . You may recall that I instructed you that on the offense of home invasion that there were five elements. Actually, in reviewing the actual charge, we realized that one of the elements I defined for you was not an element of the offense that the Commonwealth needs to prove in this case, and that is the fifth element that I defined for you was the offense was committed while armed with a firearm. The Commonwealth need not have proven that, so you should strike that, if you have any notes on it, you should strike that because it is not an element."

S.A. 723 [#7]. The trial judge then reiterated the four elements listed in Mass. Gen. Laws ch. 265 § 18C, and instructed the jury: "If the prosecution has proven all *four* beyond a reasonable doubt, you will find [Petitioner] guilty; if any reasonable doubt remains in your mind as to one or more of the *four* elements, you must find [Petitioner] not guilty." Id. at 179 (emphasis added).

created a substantial risk of a miscarriage of justice." Negrón II, 2014 WL 801645, at *1. The court concluded that the trial judge "corrected the error and correctly outlined the four elements of the offense." Id.

Petitioner claims that the trial judge's instruction on the home invasion offense was contrary to Francis v. Franklin, 471 U.S. 307 (1965). Pet. 6 [#1]; Pet'r's Mem. 21-23 [#25]. In Francis, the Supreme Court held that a jury instruction "violate[s] the Due Process Clause if [the instruction] relieve[s] the State of the burden of persuasion on an element of an offense." 471 U.S. at 314 (citing Patterson v. New York, 432 U.S. 197, 215 (1977)). Petitioner argues that by excluding the requirement that the Commonwealth show that the dangerous weapon was a firearm, the judge improperly relieved the Commonwealth of "[its] burden of persuasion on an element of an offense." Francis, 471 U.S. at 314.

However, Mass. Gen. Laws ch. 265, § 18C, does not provide that a "dangerous weapon" must be an operable firearm. Instead, under state law, the Commonwealth may support the offense without showing that the "dangerous weapon" is a firearm. See, e.g., Doucette, 720 N.E.2d at 808, 810. Accordingly, the trial court's instruction here does not lift the prosecution's burden of proving an element of the crime.

Furthermore, if Petitioner's argument is that the jury instruction was confusing, then that argument must also fail. For an instruction to be unconstitutionally ambiguous, there must be "a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde v. California, 494 U.S. 370, 380 (1990). The trial court's instruction was clear: "The Commonwealth need not have proven [that the dangerous weapon was a firearm]" because that "was not an element of the offense." S.A. Ex. D 154-55 [#7]. This instruction did not prevent the jury from considering the firearm, and

rather, it clearly instructed the jury that the dangerous weapon need not be a firearm, although it could be.

Accordingly, Petitioner's claim that the trial judge's initial and corrective instructions were erroneous must fail.

*B. Ground 2: Insufficient Evidence*

As a related ground for habeas relief, Petitioner claims that the Commonwealth failed to satisfy the "dangerous weapon" requirement of an armed home invasion offense because the Commonwealth relied on an erroneously admitted ballistic report. However, Petitioner's argument once again is precluded by the requirements of Mass. Gen. Laws ch. 265, § 18C.

In Negrón I, the Massachusetts Appeals Court concluded that the trial court's admission of the ballistic report showing that Petitioner's handgun was operational was erroneous, because the trial court failed to introduce the testimony of the analyst responsible for that report. 2012 WL 1835125, at *3. Accordingly, the Massachusetts Appeals Court vacated all of Petitioner's firearms-related convictions that required the handgun to be operational. Id. However, the court declined to vacate Petitioner's conviction for armed home invasion because "[g]iven the different nature and elements of the home invasion charge" compared to firearms-related charges, the admission of ballistic report "could not 'have materially affected' the verdict." Id. at *3 n.11 (quoting Commonwealth v. Jefferson, 965 N.E.2d 800, 810 (Mass. 2012)).

Petitioner argues that the Massachusetts Appeals Court should have vacated his armed home invasion charge for the same reason that it vacated his other firearms-related charges. See Pet. 9-10 [#1]; see also Pet'r's Mem. 19-20 [#25]. According to Petitioner, similar to other firearms-related charges, the armed home invasion charge required a showing that the "dangerous weapon" was an operational firearm. Id. He contends that, since the only evidence

supporting that the handgun was operational was the erroneously admitted ballistic report, there was insufficient evidence in proving the "dangerous weapon" element of the armed home invasion charge under Mass. Gen. Laws ch. 265, § 18C. Id.

In evaluating whether the evidence is sufficient to support a conviction, the court on habeas review must determine whether "after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition, the court must gauge the evidence "in the light of applicable [state] law defining the element[s] [of the crime]." Id. at 324. The state court's interpretation of the state law is binding on the federal court for habeas corpus purposes. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

To be a "dangerous weapon" within the meaning of Mass. Gen. Laws ch. 265, § 18C, the instrument must show "only [an] apparent ability to injure." Commonwealth v. Mattei, 920 N.E.2d 845, 851 n.12 (Mass. 2010). Whether an instrument has an apparent ability to injure depends on how "the victim reasonably . . . perceive[s] it." Id. Furthermore, "[t]he law need not wait until the instrument actually does cause serious bodily harm." Mattei, 920 N.E.2d at 851 (citation omitted). Therefore, the fact that the firearm might not actually have been operational is irrelevant under state law so long as it reasonably appeared to be operational to the victim.

Here, Petitioner "and three others, while armed with guns, forced their way into an apartment and threatened to shoot people inside it." Negrón II, 2014 WL 801645, at *2. In such a situation, a reasonable person would certainly perceive that Petitioner's firearm could cause harm, regardless of whether it was actually operational. Therefore, that the Commonwealth failed to show that the firearm was operational could not have affected the verdict.

Accordingly, Petitioner's claim that the Commonwealth failed to provide sufficient

evidence in support of the armed home invasion charge must fail, because, under state law, the "dangerous weapon" element is satisfied so long as the handgun had "[an] apparent ability to injure." Mattei, 920 N.E.2d at 851 n.12.

### C. Ground 3: Ineffective Trial Counsel

Petitioner claims that trial counsel's assistance was ineffective, in violation of the Sixth Amendment to the Constitution, because he failed to review the information of the firearm's malfunctioning on the ballistic certificate, failed to challenge the evidence about the missing six bullets, failed to request a curative instruction about whether a gun that cannot discharge could be a "dangerous weapon," failed to object to an improper home invasion instruction and failed to raise the issue on direct appeal, and failed to object to the Commonwealth's misstatement of the evidence. Pet. 8 [#1]. However, as Respondent contends, Petitioner's claim for ineffective trial counsel must fail because it is unexhausted. Furthermore, even when viewed on merits, Petitioner's claim fails to meet the Strickland requirements, as his argument once more is precluded by the requirements of Mass. Gen. Laws ch. 265, § 18C.

1. Exhaustion

Petitioner failed to exhaust his claim for ineffective assistance of trial counsel within the state court system. Although he twice sought review in the Supreme Judicial Court, S.A. 581, 903-40 [#10], neither petition included a claim for an ineffective assistance of trial counsel. Accordingly, Petitioner's claim that his trial counsel's assistance was ineffective contrary to the Sixth Amendment to the Constitution is unexhausted, as he failed to bring this claim through "one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

2.  Merits

The ineffective assistance of trial counsel claim also fails on the merits.[4] To succeed on an ineffective assistance claim, Petitioner must show that: "counsel's representation fell below an objective standard of reasonableness" and that "the deficient performance prejudiced his defense." Strickland, 466 U.S. at 687-88. The court must also consider "[t]he fundamental fairness of the proceeding whose result is being challenged," id. at 696, but "there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight," Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).[5]

a)      Failure to review the information of the firearm's malfunctioning on the ballistic certificate; failure to challenge the evidence about the missing six bullets

Petitioner argues that the trial counsel's failure to review the ballistic certificate and to challenge the evidence about the missing bullets constitutes ineffective assistance. The implication of this argument is that had the trial counsel reviewed the certificate and challenged the missing bullets evidence, then he could have shown that the gun was non-operational and/or loaded with blanks and could have undermined the "dangerous weapon" requirement of the armed home invasion offense. However, as previously discussed, showing that the gun was operational is not a requirement under Mass. Gen. Laws ch. 265, § 18C. Mattei, 920 N.E.2d at

---

[4] Under 28 U.S.C. § 2254(b)(2), the court may deny the application for a writ of habeas corpus on the merits, even if it finds that the applicant failed to exhaust his claims.

[5] In his Memorandum of Law in Support of the Writ of Habeas Corpus [#25], Petitioner fails to discuss his claim for ineffective assistance by trial counsel. Nonetheless, being mindful that Petitioner proceeds *pro se*, this memo considers the grounds for ineffective assistance set forth in the petition. See Bates v. Grant, No. 03-2390, 2004 WL 943631, at *4 (1st Cir. May 4, 2004) (giving the *pro se* petitioner "the benefit of a generous reading of his brief").

851 n.12. The weapon merely has to reasonably appear dangerous to the victim to constitute a "dangerous weapon" to support an armed home invasion offense. Id. Accordingly, trial counsel's failure to challenge the ballistic report and the missing six bullets was objectively reasonable under Strickland, since the ballistic report and the operability of the firearm were irrelevant to proving the "dangerous weapon" requirement of the charge. See Strickland, 466 U.S. at 688.

> b) Failure to request a curative instruction about whether a gun that cannot discharge could be a "dangerous weapon"; failure to object to an improper home invasion instruction; failure to raise the issue on direct appeal

Petitioner argues that the trial counsel's assistance was ineffective because he failed to request a curative instruction on whether a gun that cannot discharge could be a "dangerous weapon." Furthermore, Petitioner believes that the trial counsel should have objected to the jury instruction and raised the issue on direct appeal. However, as discussed above, under Mass. Gen. Laws ch. 265, § 18C, the "dangerous weapon" need not be a firearm and need not be operational, so long as the victim perceives it as a threat. Mattei, 920 N.E.2d at 851 n.12. Trial counsel was objectively reasonable in not challenging the jury instructions and not raising this issue on direct appeal, since Mass. Gen. Laws ch. 265, § 18C does not require that the gun must be able to discharge to be a "dangerous weapon." See Strickland, 466 U.S. at 688.

### D. Ground 4: Violation of the Right to Public Trial under the Sixth Amendment

Petitioner next claims that his family members were not permitted in the courtroom during jury empanelment and *voir dire* in violation of his First and Sixth Amendment rights to a public trial.[6] Pet. 13 [#1]. This claim, however, is unexhausted. Like the ineffective assistance of

---

[6] Because the Massachusetts Appeals Court did not reach the merits of Petitioner's claim for public trial, and because Petitioner did not raise this claim until his collateral appeal, the record contains scant facts surrounding this claim.

trial counsel claim, Petitioner did not include this claim in either petition seeking review in the Supreme Judicial Court, S.A. 581, 903-40 [#10], and thus failed to bring this claim through "one complete round of the State's established appellate review process," O'Sullivan, 526 U.S. at 845.

Moreover, as the Massachusetts Appeals Court noted, Petitioner "first raised the issue in his appellate brief" challenging the denial of his second motion for a new trial. Negrón II, 2014 WL 801645, at *2 n.2. Due to Petitioner's failure to raise the issue previously, the Massachusetts Appeals Court held that "[t]he claim [was] not properly before [it]." Id. Petitioner's claim for a public trial is thus procedurally defaulted. See Coleman, 501 U.S. at 750 (habeas review is generally precluded where the state court has decided the issue on the basis of an adequate and independent state procedural rule); Costa v. Hall, 673 F.3d 16, 23 (1st Cir. 2012) (Massachusetts requirement that defendant present claims of error at the earliest possible time is an adequate and independent state ground).

A petitioner may overcome procedural default where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750. Petitioner seeks to excuse his procedural default on the ground that his counsel on direct appeal was ineffective. This argument, however, is without merit.

To demonstrate ineffective assistance of counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that "the deficient performance prejudiced his defense." Strickland v. Washington, 466 U.S. at 687-88. The Supreme Court recently explained that "when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, Strickland prejudice is not shown automatically." Weaver v. Massachusetts, 137 S. Ct. 1899, 1911 (2017). Instead, where a defendant raises an ineffective-assistance argument on collateral review that is based on the public-trial right, "the

13

burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." Id. (citation omitted).

Petitioner has failed to meet that burden. He does not argue that the error resulted in actual prejudice, and, though it is "possible that potential jurors might have behaved differently if [Petitioner's] family had been present, . . . [Petitioner] offered no evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome but for counsel's failure to object." Id. at 1912-13. Because Petitioner is not entitled to a presumption of prejudice, and has failed to show "that the potential harms flowing from a courtroom closure came to pass in this case," id. at 1913, he has failed to demonstrate prejudice as his ineffective-assistance claim requires, and thus cannot excuse his procedural default. See Alebord v. Mitchell, No. 14-cv-10493-IT, 2017 WL 2958495 (D. Mass. July 11, 2017).

E. *Ground 5: Batson Challenge*

Petitioner's memorandum in support of his habeas petition includes a challenge pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), regarding the Commonwealth's peremptory challenges to potential jurors. Pet'r's Mem. [#25]. This claim was not included in the petition itself, however, barring relief on the petition as filed. See Rule 2(c) of the Rules Governing § 2254 Cases in the United States District Court (providing that "a petition must . . . (1) specify all grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground"); Smiley v. Maloney, No. 01-11648, 2003 WL 23327540, at *16 n.39 (D. Mass. Oct. 31, 2003) ("It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief."); Lamartine v. Ryan, No. 15-13052, 2016 WL 6133820, at

*4 (D. Mass. Oct. 19, 2016) (finding that the *pro se* habeas corpus petitioner waived his claim by including it only in his accompanying memorandum but not his petition); Leng v. Gelb, No. 14-cv-10462, 2016 WL at 7428221, at *4 ("Because this federal constitutional argument appeared for the first time in the Memorandum of Law and not in the original petition, Leng [a *pro se* petitioner] is barred from arguing that his trial counsel's failure to object to evidence relating to his gang membership was ineffective assistance of counsel under the Sixth Amendment.").

Nor is amendment of the petition appropriate, because the state court decision is not an unreasonable application of a clearly established federal law pursuant to 28 U.S.C. § 2254(d).

In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court held that peremptory challenges based on race "constitute[] a primary example of the evil the Fourteenth Amendment was designed to cure." Id. at 85.[7]

To show that a peremptory challenge has been exercised in violation of the Equal Protection Clause of the Fourteenth Amendment, Petitioner must first make a *prima facie* case showing that the prosecutor exercised peremptory challenge based on race. Id. at 96-98. To establish a *prima facie* case, the moving party

> first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the [moving party] is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the [moving party] must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

Batson, 476 U.S. at 96 (citations omitted).

---

[7] Race-based challenges that may violate the Equal Protection Clause include challenges of Latino or Hispanic jurors. Hernandez v. New York, 500 U.S. 352 (1991).

Upon a *prima facie* showing, the burden shifts to the prosecution to articulate a race-neutral rationale for striking the jurors in question. Id. at 97. Then, the court must determine whether the moving party has carried his burden of showing purposeful discrimination. Id. at 98.

During jury empanelment, the Commonwealth exercised peremptory challenges regarding the only non-white venire members: Juror 15, a male with a Hispanic surname, and Juror 65, an African-American woman. Mem. of Decision and Order on the Def.'s Mot. for New Trial. S.A. 438 [#10]; Pet'r's Mem. 21-25 [#25].  Petitioner requested that the Commonwealth be required to explain its peremptory challenges. The trial court declined this request, finding that Petitioner failed to make a *prima facie* showing of a Batson claim. The trial court found that Juror 15's "apparent ethnic background, alone, is insufficient to establish a pattern of improper use of peremptory challenges" and that the Commonwealth could have permissibly struck Juror 15 based on "his failure to disclose his uncle's recent conviction and incarceration, his vague responses on the jury questionnaire, or his somewhat incoherent responses to my questions." Mem. of Decision and Order on the Def.'s Mot. for New Trial. S.A. 443 [#10]. As to Juror 65, the trial court found that her "limited education could negatively affect her ability to adjudicate the case." Id. at 444. In addition, the trial court found that "[w]hile the Commonwealth challenged one potentially Hispanic man and one black woman and the 'exclusion of jurors from one minority group due to their race may support a prima facie case that a juror from another minority group was likewise excluded due to her race,' such an inference is by no means *compulsory*." Id. at 445 (quoting Gray v. Brady, 592 F.3d 296, 303 (1st Cir. 2010)) (emphasis added). The Massachusetts Appeals Court affirmed on the same grounds. Negrón I, 2012 WL 1835125, at *1-2.

Petitioner contends that state courts erred in declining to require the Commonwealth to provide a race-neutral rationale for its peremptory challenges and concluding that Petitioner failed to establish a *prima facie* case.[8] But while Petitioner is correct that a <u>Batson</u> objector need not show that it is "more likely than not" the other party's peremptory challenges were based on racial grounds, <u>see</u> <u>Johnson v. California</u>, 545 U.S. 162, 164 (2005), <u>Batson</u> does require that the totality of facts gives "rise to an inference of discriminatory purpose" to establish a *prima facie* showing, <u>id.</u> at 169. The moving party may offer a wide variety of evidence to raise this inference. <u>Id.</u>

Here, Petitioner offered only numbers-based factors to support the inference, and no other evidence. While such evidence is clearly appropriate, <u>see</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240-41 (2005) (assessing the number of strikes that the prosecution has exercised against minority jurors in evaluating a <u>Batson</u> challenge), "the mere fact that the prosecutor challenges the only juror of a particular race, without more, does not automatically give rise to an inescapable inference of discriminatory intent," <u>Gray</u>, 592 F.3d at 304 (citation omitted). Rather, other factors may be needed to raise the inference. <u>See</u> <u>id.</u> ("[A petitioner] who advances a <u>Batson</u> argument ordinarily should come forward with facts, not just numbers alone." (alteration in original) (citation omitted)); <u>United States v. Charlton</u>, 600 F.3d 43, 54 (1st Cir. 2010) (rejecting <u>Batson</u> claim where appellant "appeal[ed] to just numbers alone, precisely what we have cautioned against" (citation omitted)); <u>Dretke</u>, 545 U.S. at 240-41 (noting that while "[t]he numbers describing the prosecution's use of peremptories are remarkable, . . . [m]ore powerful

---

[8] Petitioner's argument is specific to the trial court's decision not to require the Commonwealth to provide a race-neutral rationale for its peremptory challenges. However, for the purpose of federal review of a writ of habeas corpus petition, the Massachusetts Appeals Court's affirmance of the trial court's finding is at issue.

than [the] bare statistics . . . are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve"); cf. Sanchez v. Roden, 753 F.3d 279, 292 (1st Cir. 2014) (finding that petitioner succeeded in establishing a *prima facie* case of discrimination where "the government struck the black juror while allowing the white one to serve" and "[t]he only objective difference between the two young men appearing in this record is their race").

In Sanchez, in making its Batson objection, the defense argued that "no non-discriminatory reason explained why the prosecutor struck Juror No. 261 but not other prospective jurors." 753 F.3d at 299. Here, in contrast, as articulated by the trial court, there were non-discriminatory reasons. Under Batson, such a determination was within the trial court's discretion. Batson, 476 U.S. at 97 ("We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.").

While Petitioner's burden at the *prima facie* showing is not substantial, Sanchez, 753 F.3d at 301-02, Petitioner must meet this burden for the court to proceed further with the Batson analysis. The state court decision finding that Petitioner did not meet this burden is not an unreasonable application of a clearly established federal law pursuant to 28 U.S.C. § 2254(d).

IV.    Conclusion

Based on the foregoing, Negrón's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [#1] is DENIED.

IT IS SO ORDERED.

Date: August 24, 2017                                   /s/ Indira Talwani
                                                        United States District Judge